UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VITO MAXMILLION HALE,

                Petitioner,           Case No. 2:16-cv-14257
                                                    Hon. Paul D. Borman

v.

RANDALL HAAS,

                Respondent.
_____/

**OPINION AND ORDER (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS, (2) DENYING CERTIFICATE OF APPEALABILITY, AND (3) DENYING PERMISSION TO APPEAL IN FORMA PAUPERIS**

This is a habeas case filed by a Michigan prisoner under 28 U.S.C. § 2254. Petitioner Vito Maxmillion Hale was convicted after he pled guilty in the St. Clair Circuit Court to two counts of first-degree criminal sexual conduct, MICH. COMP. LAWS § 750.520b, one count of torture, MICH. COMP. LAWS § 750.85, and two counts of unlawful imprisonment. MICH. COMP. LAWS § 750.349b. The court sentenced Petitioner to three concurrent terms of 18 years and 9 months to 30 years for the torture and criminal sexual conduct convictions and two terms of 10 to 15 years for the unlawful imprisonment convictions.

The petition raises two claims: (1) Petitioner's guilty plea was the product of ineffective assistance of trial counsel, and (2) Petitioner's sentencing guidelines

were incorrectly scored. The Court finds that Petitioner's claims are without merit and will therefore deny the petition. The Court will also deny Petitioner a certificate of appealability and deny him permission to proceed on appeal in forma pauperis.

**I. Background**

The charges against Petitioner arose from allegations that he held two individuals hostage at his apartment where he beat, sexually abused, and humiliated them.

On April 17, 2013, after a "lengthy discussion [between] all of the parties involved," Petitioner entered into a plea agreement. Dkt. 8-4, at 3. The prosecutor placed the terms of the agreement on the record. Petitioner agreed to plead guilty to the offenses indicated above and to be subject to lifetime electronic monitoring. Id. at 4. In exchange, the prosecutor agreed to dismiss two additional counts of first-degree criminal sexual conduct and an assault charge relating to an incident occurring at the county jail between Petitioner and a deputy. Id. at 4-5. The parties also agreed on the scoring of the sentencing guidelines. Id. at 4.

Both defense counsel and Petitioner indicated that the prosecutor accurately stated the terms of the plea agreement. Id. at 5. Petitioner indicated that he had sufficient time to discuss the matter with defense counsel, and he stated that he

understood what was happening at the proceeding. Id. at 5.

The trial court indicated that it had previously received a letter from Petitioner expressing dissatisfaction with his counsel, and that Petitioner wished to be appointed a new attorney. Id. at 6-7. The trial court inquired whether Petitioner wished to proceed with that request in light of the plea agreement, and Petitioner indicated he was withdrawing his request for new counsel. Id. at 7.

Petitioner's counsel stated that he had previously discussed with the prosecutor the issue of Petitioner's competency or whether a referral to the Forensic Center was necessary for an evaluation, and the attorneys agreed that an evaluation was not necessary. Id. at 7. The trial court accepted the parties' representation as to Petitioner's competence "at face value, and we will move on." Id. at 8.

Petitioner was then placed under oath. Id. at 8. Petitioner testified that he was twenty-one years old, and he was a high school graduate. Id. at 9. The trial court informed Petitioner of the charges against him. Id. at 9-13. Petitioner indicated his understanding of the nature of the offenses, and he confirmed that his attorney had explained the charges to him. Id. Petitioner was informed of the maximum penalty for each offense, and he indicated his understanding. Id.

Petitioner stated that he understood if his plea were accepted by the court that he faced up to life-imprisonment or any term of years for the criminal sexual conduct and torture offenses, and a term of up to fifteen years for the unlawful imprisonment offenses. Id. Petitioner also indicated his understanding that he would be subject to lifetime electronic monitoring. Id.

The Court informed Petitioner that he had a right to a trial, but that if his guilty plea were accepted he would be giving up that right. Id. at 13. The trial court then informed Petitioner of all the trial rights he would be waiving by entering a guilty plea. Id. at 13-14. Petitioner indicated his understanding. Id. Petitioner was also informed of the appellate rights he was waiving by entering his guilty plea, and Petitioner again indicated his understanding. Id. at 14.

The trial court informed Petitioner that it understood there was an agreement on the scoring of the sentencing guidelines between the parties, but the court stated that it was not bound by that agreement and would consider the scoring of the guidelines offered by the probation department as well. Id. at 14-15. Petitioner indicated his understanding. Id.

Petitioner was then asked how he wished to plead with respect to each of the five offenses, and after each count was read Petitioner indicated he wished to plead guilty. Id. at 15-16. Petitioner then affirmed that he was pleading guilty by his own

choice. Id. at 17. Petitioner denied that anyone had threatened him in order to get him to plead guilty. Id. Petitioner also denied that anyone had promised him anything other than what was placed on the record. Id.

Petitioner then gave a factual basis for his plea. Petitioner testified that in January of 2013, Cody Burtch and Melissa Hunt resided with him at his apartment in Port Huron. Id. at 17-18. Petitioner admitted that he beat Burtch and caused severe bruising. Id. at 18. Petitioner admitted that he urinated on the two victims while he forced them to clean his bathroom. Id. at 18-19. Petitioner testified that he forced his penis inside Burtch's mouth while he had Hunt hold Burtch down on the floor. Id. at 20. Petitioner also forced the victims to have sex with each other. Id. at 20.

Petitioner admitted that he forced Burtch to go outside while naked to the point that his feet became bloody from the cold. Id. at 21-22. Petitioner admitted that he tied Burtch up and forced a sex toy into his rectum against his will. Id. at 22-25. Petitioner testified that he directed Hunt to perform oral sex on Burtch against her will, and Burtch was forced to perform oral sex on Hunt against his will. Id. at 22-23, 26. During these episodes other people took part in the abuse and photographed the victims. Id. at 24-25. Neither victim was free to leave Petitioner's apartment during this time-frame, and they were required to do what

Petitioner directed them to do. Id. at 25.

Petitioner indicated to the court that his testimony was truthful. Id. at 26. Petitioner denied that he was having any difficulty hearing or understanding what was happening in court. Id. at 26. Both attorneys denied knowing of any threats or promises made to induce the plea other than the promises that were placed on the record. Id. at 27.

The court found that Petitioner's guilty plea was accurate and voluntary. Id. at 27.

Petitioner was subsequently sentenced as indicated above to terms that fell within the agreed-upon sentencing guidelines score. Dkt. 8-5.

Following sentencing, Petitioner was appointed appellate counsel who filed an application for leave to appeal in the Michigan Court of Appeals. The application raised the same two claims Petitioner presents in this action:

> I Mr. Hale has a right to withdraw his guilty pleas because his guilty pleas were the product of ineffective assistance of trial counsel on two grounds:
>
> > A. Trial counsel failed to pursue evaluations for competency to stand trial and for criminal responsibility while having knowledge that Mr. Hale suffered with several mental/emotional disorders and deficiencies; and
> >
> > B. As part of the plea agreement, trial counsel stipulated to incorrectly scored sentencing guidelines.

II. Mr. Hale is entitled to a re-sentencing based upon incorrectly scored sentencing guidelines.

The Michigan Court of Appeals denied Petitioner's application for leave to appeal "for lack of merit in the grounds presented." *People v. Hale*, No. 324623 (Mich. Ct. App. Dec. 29, 2014). Petitioner subsequently filed an application for leave to appeal in the Michigan Supreme Court that raised the same claims, but his appeal was denied by standard order. *People v. Hale*, 869 N.W.2d 569 (Mich. 2015) (Table).

## II. Standard of Review

28 U.S.C. § 2254(d)(1) curtails a federal court's review of constitutional claims raised by a state prisoner in a habeas action if the claims were adjudicated on the merits by the state courts. Relief is barred under this section unless the state court adjudication was "contrary to" or resulted in an "unreasonable application of" clearly established Supreme Court law.

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam), quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).

7

"[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003), quoting *Williams*, 529 U.S. at 413.

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011), quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103 (internal quotation omitted).

## III. Analysis

A. Ineffective Assistance of Counsel

Petitioner first challenges the effectiveness of his trial counsel. He primarily asserts that his counsel performed deficiently by failing to move to have Petitioner evaluated for competency to stand trial and to determine whether he had a viable insanity defense.[1] The Michigan Court of Appeals summarily denied this claim "for lack of merit." The AEDPA deferential standard of review applies to the state adjudication of Petitioner's claims because the Michigan Court of Appeals' order constitutes a decision on the merits. See *Werth v. Bell*, 692 F. 3d 486, 492-94 (6th Cir. 2012).

The Sixth Amendment guarantees a criminal defendant the right to the effective assistance of counsel. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court set forth a two-prong test for determining whether a habeas petitioner has received ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he was not functioning as counsel as guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. Second, the

---

[1] Petitioner also claims that his counsel was ineffective for failing to challenge the scoring of the sentencing guidelines. That allegation will be discussed below with Petitioner's second claim.

9

petitioner must establish that counsel's deficient performance prejudiced the defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal. *Id*.

To satisfy the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance." *Id*. at 690. A reviewing court's scrutiny of counsel's performance is highly deferential. *Id*. at 689. There is a strong presumption that trial counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id*.

In the guilty plea context, prejudice is established if there is a reasonable probability that, but for counsel's errors, the petitioner would not have pled guilty and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985). "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

The Michigan Court of Appeals' summary decision on the merits did not contravene the clearly established Supreme Court standard. Petitioner supports his claim with his own representations that were included in the Pre-Sentence

Investigation Report ("PSI"), and representations made in his counsel's sentencing memorandum. See Dkt. 8-6, Application for Leave to Appeal, at 11-12. In the PSI, Petitioner claimed he had been diagnosed with "ADD, bipolar disorder, clinical depression, and schizophrenia in the past." Id. at 11. Despite these conditions, neither Petitioner nor the probation officer who prepared the PSI suggested that Petitioner did not understand the wrongfulness of his conduct or that he could not control his actions at the time of the offenses. Meanwhile, defense counsel's sentencing memorandum sought to use Petitioner's troubled past and history of mental illness as mitigating circumstances justifying a more lenient sentence. But defense counsel stopped short of claiming that Petitioner had a viable insanity defense despite his statement that "Defendant appears to have a troubling inability to understand the difference between right and wrong." Id. at 12.

Defense counsel must conduct a reasonable investigation into the facts of a defendant's case, or make a reasonable determination that such investigation is unnecessary. *Strickland*, 466 U.S. at 691; *Stewart v Wolfenbarger*, 468 F.3d 338, 356 (6th Cir. 2007); *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). The failure to present evidence constitutes ineffective assistance of counsel only when it deprives a defendant of a substantial defense. *Chegwidden v. Kapture*, 92 F. App'x 309, 311 (6th Cir. 2004); *Hutchison v. Bell*, 303 F.3d 720, 749 (6th Cir. 2002).

Here, Petitioner fails to show that trial counsel performed deficiently by failing to investigate and present an insanity defense rather than advise Petitioner to accept the plea bargain. This is not a case where defense counsel was unaware of a potential issue. The matter was discussed at the plea hearing where defense counsel indicated his belief that a referral to the Forensic Center was unnecessary. Counsel's statements in his sentencing memorandum likewise indicate his familiarity with Petitioner's history of mental illness and evidences a strategic decision to use it as a mitigating factor at sentencing rather than a trial defense.

Furthermore, nothing in the record supports Petitioner's contention that he was insane at the time of the offenses. Under Michigan law, a criminal defendant has the burden of proving the affirmative defense of insanity by a preponderance of the evidence. See MICH. COMP. LAWS § 768.21a. To establish such a defense, the defendant must show that, at the time of the offense, he had a mental illness or an intellectual disability and that, as a result, he lacked the substantial capacity either to appreciate the nature and quality or the wrongfulness of his conduct or conform his conduct to the requirements of the law. Id.; *People v. Carpenter*, 464 Mich. 223, 230-31 (2001). While Petitioner's own representations to the probation officer preparing the PSI indicate that Petitioner may suffer from one or more mental illnesses, the record does not indicate that he experienced mental illness symptoms

at the time of the offense which prevented him from understanding the nature or wrongfulness of his conduct or prevented him from conforming his conduct to the law. Contrary to defense counsel's hyperbolic statement in the sentencing memorandum, Petitioner failed to proffer the state courts with any evidence tending to indicate that he had a viable insanity defense.[2] Conclusory allegations without evidentiary support do not provide a basis for habeas. See *Cross v. Stovall*, 238 F. App'x 32, 39-40 (6th Cir. 2007); *Prince v. Straub*, 78 F. App'x 440, 442 (6th Cir. 2003); *Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998). Petitioner fails to establish that counsel performed deficiently by failing to pursue an insanity defense.

As to the issue of competency, federal constitutional law establishes that a criminal defendant may not be tried unless he is competent. *Indiana v. Edwards*, 554 U.S. 164, 169-70 (2008); *Godinez v. Moran*, 509 U.S. 389, 396 (1993). The standard for competence to stand trial is whether the defendant has (1) sufficient present ability to consult with a lawyer and (2) a rational and factual understanding

---

[2]The only record attached to Petitioner's Application for Leave to Appeal filed in the Michigan Court of Appeals is a March 29, 2011, psychiatric evaluation performed by a private provider. Contrary to Petitioner's representations to the author of the PSI, the report indicates a diagnosis of "Oppositional defiant disorder, Mood disorder, and Attention-deficit/hyperactivity disorder." Defendant's Application for Leave to Appeal, Exhibit D, at 4-5. The report contains no information tending to support a claim of legal insanity or of incompetence to plead guilty.

of the proceedings against him. *Id.* at 396-98. Due process is violated by a trial court's failure to hold a competency hearing where there is substantial evidence of a defendant's incompetency. *Pate v. Robinson*, 383 U.S. 375, 385-86 (1966). The question for a reviewing court in such a case is whether a reasonable judge, situated as was the trial court judge, should have experienced a "bona fide doubt" about the defendant's competency. *Warren v. Lewis*, 365 F.3d 529, 533 (6th Cir. 2004) (citing *Drope v. Missouri*, 420 U.S. 162, 173 (1975)). Silence by a defendant and defense counsel on the issue of competency at the time of trial is significant evidence that there is no bona fide doubt about the defendant's competency. *United States v. Gignac*, 301 F. App'x 471, 475 (6th Cir. 2008).

Having reviewed the state court record, the Court concludes that trial counsel did not err in failing to challenge Petitioner's competency to be tried or to plead guilty. A reasonable defense attorney (or reasonable judge sitting as the trial judge) would not have experienced a bona fide doubt as to Petitioner's competency at the time he entered his plea. While Petitioner may suffer from mental illnesses, the record is devoid of evidence that he was incompetent at the time of the plea and was unable to consult with defense counsel or understand his criminal proceedings. To the contrary, the record indicates that Petitioner consulted with counsel at length prior to his plea. Moreover, Petitioner's statements and testimony at the plea

hearing were appropriate, responsive, and coherent.

Petitioner simply proffered no evidence to the state courts, and he proffers no evidence here, to create a real and substantial doubt as to his competency or sanity so as to warrant any relief from this Court. See *Thirkield v. Pitcher*, 199 F. Supp. 2d 637, 653 (E.D. Mich. 2002) (citing cases). Petitioner therefore fails to show that defense counsel's performance was deficient or that he was prejudiced by his counsel's conduct. Petitioner's first claim was reasonably rejected by the Michigan Court of Appeals.

B. Sentencing Guidelines

Petitioner's second claim concerns the scoring of the sentencing guidelines. Specifically, Petitioner takes issue with the scoring of the offense variable concerning whether the victims were placed in danger of physical injury or death, contending that no points were warranted for that variable. Petitioner also argues that he was scored excessive points for the offense variable concerning the number of sexual penetrations that occurred beyond the charged offenses. Petitioner asserts that no points were warranted for that variable.

Petitioner's sentencing claims are without merit. Ordinarily, a sentence falling within statutory limits is not subject to federal habeas review. *Townsend v. Burke*, 334 U.S. 736, 741 (1948); *Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D.

Mich. 1999). Here, Petitioner's sentences fell within the statutory maximums. See MICH. COMP. LAWS § 750.520b (setting life or any term of years as maximum penalty for first-degree criminal sexual conduct); MICH. COMP. LAWS § 750.85 (setting life or any term of years as maximum penalty for torture); MICH. COMP. LAWS § 750.349b (setting fifteen-year maximum penalty for unlawful imprisonment).

Moreover, Petitioner's claim that the trial court misapplied Michigan law in the scoring of the sentencing guidelines amounts to a non-cognizable assertion that the state court misapplied its own laws. See *Howard v. White*, 76 F. App'x 52, 53 (6th Cir. 2003) ("A state court's alleged misinterpretation of state sentencing guidelines . . . is a matter of state concern only.") (citations omitted); *Austin v. Jackson*, 213 F.3d 298, 300-01 (6th Cir. 2000) (holding state court did not abuse its discretion nor violate federal due process by imposing a sentence above the state sentencing guidelines).

The parties agreed to the scoring of the sentencing guidelines. As it turns out, this agreement worked to Petitioner's benefit. The trial court indicated at the sentencing hearing that, "I might have come up with something different. And there were certain variables that I felt could apply and maybe should have applied that would have put [Petitioner] into a higher grid with a higher low end and a

higher high end on the sentencing guideline range." Dkt. 8-5, at 16.

In any event, and contrary to Petitioner's assertions, the record established at the preliminary examination supported a finding that Petitioner sexually penetrated Burtch many more times than the two charged instances. See Dkt. 8-2, at 47, 51, and 54 (describing various objects Petitioner used to sexually penetrate Burtch). Furthermore, the record supports the scoring of points for the victim being placed in danger of death or serious injury. Aside from being placed naked outside in freezing temperatures until his feet were bleeding, Burtch's testimony at the preliminary examination described multiple beatings and threats of death. Id., at 32-33, 41. Any alleged errors in the scoring of the offense variables of the Michigan Sentencing Guidelines do not justify federal habeas relief.

Petitioner also asserts that his sentences violate federal due process because the guidelines were scored based on material misinformation. A sentence might violate federal due process if it is carelessly or deliberately pronounced on an extensive and materially false foundation which the defendant had no chance to rectify. *Townsend*, 334 U.S. at 741; see also *United States v. Tucker*, 404 U.S. 443, 447 (1972). To prevail on this claim, a petitioner must show that a court relied upon false information. *Draughn v. Jabe*, 803 F. Supp. 70, 80 (E.D. Mich. 1992).

Petitioner fails to show that the sentencing court relied upon false information. The record reveals that Petitioner had an opportunity to challenge the guidelines scoring at the sentencing hearing. Petitioner also presented his sentencing issues to the state appellate courts and did not obtain relief. And as indicated above, the scoring of the guidelines was supported by the evidence presented at the preliminary examination and Petitioner's own testimony at the guilty plea hearing. Accordingly, the Court finds that no due process violation occurred.

Finally, Petitioner asserts that his counsel was ineffective for failing to object to the scoring of the sentencing guidelines. The record indicates, however, that had counsel not agreed to the scoring of the guidelines, the trial court would have scored them more harshly against Petitioner. Dkt. 8-5, at 16. Petitioner has therefore failed to show that he was prejudiced by his counsel's purported ineffectiveness. See *Spencer v. Booker*, 254 F. App'x 520, 525-26 (6th Cir. 2007).

As both of Petitioner's claims are without merit, the petition for a writ of habeas corpus will be denied.

## IV. Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability issues. A certificate of appealability

may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Courts must either issue a certificate of appealability indicating which issues satisfy the required showing or provide reasons why such a certificate should not issue. 28 U.S.C. § 2253(c)(3); Fed. R. App. P. 22(b); *In re Certificates of Appealability*, 106 F.3d 1306, 1307 (6th Cir. 1997).

To receive a certificate of appealability, "a petitioner must show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotes and citations omitted). Here, jurists of reason would not debate the Court's conclusion that Petitioner has not met the standard for a certificate of appealability because his claims are devoid of merit. Therefore, the Court denies a certificate of appealability.

The Court will also deny permission to appeal in forma pauperis because an appeal of this decision could not be taken in good faith. 28 U.S.C. § 1915(a)(3).

may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Courts must either issue a certificate of appealability indicating which issues satisfy the required showing or provide reasons why such a certificate should not issue. 28 U.S.C. § 2253(c)(3); Fed. R. App. P. 22(b); *In re Certificates of Appealability*, 106 F.3d 1306, 1307 (6th Cir. 1997).

To receive a certificate of appealability, "a petitioner must show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotes and citations omitted). Here, jurists of reason would not debate the Court's conclusion that Petitioner has not met the standard for a certificate of appealability because his claims are devoid of merit. Therefore, the Court denies a certificate of appealability.

The Court will also deny permission to appeal in forma pauperis because an appeal of this decision could not be taken in good faith. 28 U.S.C. § 1915(a)(3).

## V. Conclusion

Accordingly, the Court 1) **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus, 2) **DENIES** a certificate of appealability, and 3) **DENIES** permission to appeal in forma pauperis.

**SO ORDERED.**

s/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated: May 31, 2018

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on May 31, 2018.

s/Deborah Tofil
Case Manager